UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE URBANA DIVISION

DENNIS NOONAN AND LANA NOONAN,   )
                                 )
                     Plaintiffs, )
                                 )
       vs.                       )
                                 )
THOMAS HARRINGTON,               )
                                 )
                     Defendant.  )

## COMPLAINT

For cause of action against the Defendant for legal malpractice, the plaintiffs allege as follows:

I
JURISDICTION

The plaintiff is a citizen of Arizona. The Defendant is a citizen of Illinois. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 USC Section 1332.

II
VENUE

The Defendant is a resident of Champaign County, Illinois and the transactions and facts alleged herein occurred in Champaign County Illinois.

III
STATEMENT OF THE CLAIM

**COUNT I**

1. Worden-Martin Inc. ( "the Corporation) is a Corporation engaged in the business of selling and servicing automobiles in Champaign County Illinois.

2. Plaintiffs were shareholders in the Corporation from March 2001 until May 2008.

3. During that time Plaintiffs were the owners of 20% of the stock issued by the Corporation.

4. A majority of the stock issued by the Corporation was owned by Lloyd Worden, Howard Martin and Patti Peterson ("the Majority Shareholders").

5. On March 1, 2001, Plaintiffs and the Majority Shareholders signed a shareholders agreement prepared by the Defendant, a copy of which is attached hereto as Exhibit 1.

6. The agreement placed limitations on the sale of the Corporation's stock.  Before a shareholder in the Corporation could sell his stock, the agreement required the stock first be offered to the other shareholders on a pro rata basis.

7. The Corporation was a Subchapter S Corporation under the Internal Revenue Code. The shareholders agreement provided that no more than 15% of earnings of the Corporation would be designated retained earnings.

8. The agreement also provided as follows:

> The stockholders further agree that the Corporation shall distribute monthly pro rata among all shareholders a minimum of $50,000 as a draw against earnings of Corporation.

9. The agreement further provides that each stock certificate shall bear a legend making reference to the shareholders agreement, the legend to be that "the agreement provides that transferees, pledgees, and assignees of the shares are bound by said agreement."

10. The Defendant Thomas E. Harrington was the attorney for the Plaintiffs beginning in 1989. The attorney-client relationship included but was not limited to the following representation and counseling by the Defendant for the Plaintiffs:

A. Representation, advice and preparation of documents in all of Plaintiffs business matters, including but not limited to the formation of the corporation known as Carriages of Illinois, shareholder agreements in Carriages of Illinois and the Corporation, merger agreement between Carriages of Illinois and the Corporation, advice and counsel and preparation of documents in the sale by the Majority Shareholders to the stock purchaser, George Shapland, preparation of land trust agreements and leases for real estate used by Carriages of Illinois and the Corporation to carry on the business and the eventual purchase of Plaintiffs stock and real estate used by the Corporation in conducting its business. This representation continued through May 2008

B. Purchase and sale of three residences in Champaign County, estate planning advice and documents, and a postnuptial agreement between the Plaintiffs relating to their assets and income and the potential division thereof.

11. In October or November 2003, George Shapland ("the stock purchaser") attempted to buy a controlling interest of the stock of the corporation.

12. The defendant was the attorney for the stock purchaser in the attempt to buy a controlling interest of the stock of the corporation, had been attorney for him many years, had

investments in common with the stock purchaser, and had been a personal friend of the stock purchaser since childhood.

13. The Defendant had been the attorney for the Corporation for many years prior to November 2003.

14. The Defendant had been the attorney for the Majority Shareholders of the Corporation for many years prior to November 2003.

15. The Majority Shareholders agreed to sell their stock in the corporation to the stock purchaser but the Plaintiffs refused the stock purchaser's offer of $3,125,000 for their shares.

16. During the negotiations and offers made by the stock purchaser to Plaintiffs and the Majority Shareholders, the Defendant acted as attorney for the Plaintiffs, as well as the stock purchaser.

17. During the negotiations, a conflict of interest developed between Plaintiffs and the stock purchaser.

18. It was in the interest of the Plaintiffs that earnings for the Corporation be treated and distributed according to the terms of the shareholders agreement as described above and that 85% to 90 % of earnings be distributed to shareholders, such treatment and distribution to continue during the sale by the Majority Shareholders and thereafter for an indefinite time.

19. It was in the interest of the stock purchaser to change or terminate the requirements regarding earnings in the shareholders agreement and distribution of 85% to 90% so that the stock purchaser would have complete control over earnings of the Corporation.

20. The Defendant was aware of this conflict.

21. As attorney for the Plaintiffs, it was the obligation of the Defendant to either withdraw as counsel for the Plaintiffs or to obtain their consent to his continued representation after making full disclosure to them of the conflict and its consequences.

22. The Defendant did not withdraw and did not make the disclosure required but instead gave assurances to the Plaintiffs that notwithstanding (1) the sales agreement with the Majority Shareholders, and (2)the waiver of the right of first refusal signed by the Plaintiffs waiving their rights under the Shareholders Agreement, and (3) the agreement signed by the Plaintiffs consenting to the assignment of the shareholder agreement to the stock purchaser in place of the Majority Shareholders, the stock purchaser would be obligated to continue to treat and distribute earnings of the Corporation in the same fashion as required by paragraph 7 of the shareholders agreement.

23. The sale of stock between the Majority Shareholders and the stock purchaser was closed on December 1, 2004, which put the stock purchaser in control of the Corporation. Part of the purchase price was payable to the Majority Shareholders in annual installments continuing until January 1, 2008.

24. The stock purchaser continued to distribute 85% to 90% of earnings from the Corporation with the same treatment and distribution described in the shareholders agreement.

25. On October 19, 2007 Plaintiffs learned for the first time that the Defendant had prepared a memo dated May 22, 2006, which memo is attached hereto as Exhibit 3.

26. In that memo, Defendant gave the following opinion with regard to treatment and distribution of earnings:

After the payout for the stock, the applicable document becomes the shareholder agreement and under paragraph 7 of that agreement the Corporation should withhold a minimum of 10% earnings annually and distribute $50,000 as a draw against the earnings monthly for a total of $600,000. There is no specific requirement for payout of the balance of the earnings. However, any retention should consider any needs requiring additions to capital under sound business practice.

This opinion was contrary to the opinions Defendant had previously given Plaintiffs.

27. On November 13, 2007 the Board of Directors of the Corporation passed a resolution to designate 62% of the earnings of the Corporation as retained earnings, as opposed to the limitation of a maximum of 15% being designated retained earnings in the shareholders agreement. The stock purchaser was now the controlling shareholder of the Corporation and was in effective control of the Corporation.

28. If the Defendant had disclosed to Plaintiffs his opinion as described in paragraph 26 above, Plaintiffs would not have signed the waiver of right of first refusal and would have accepted the offer of the stock purchaser to purchase their shares.

29. The failure to disclose and the failure to withdraw as described above were the proximate cause of injuries to the Plaintiffs.

30. The injuries suffered by the Plaintiffs were as follows:

A. After the board resolution on November 13, Plaintiff was forced to accept $2,334,812 for his stock in the corporation; if proper disclosure had been made to Plaintiffs, they would have accepted the stock purchaser's offer of $3,125,000 in November 2003.

B. Plaintiffs were the owners of a portion of the real estate leased to the Corporation on

which the Corporation conducted its business.  The misconduct of the defendant forced Plaintiffs to sell the real estate to the stock purchaser at a price less thaan the fair market value resulting in a loss of over $1,000,000.

## COUNT II

1. Worden-Martin Inc. ( "the Corporation) is a Corporation engaged in the business of selling and servicing automobiles in Champaign County Illinois.

2. Plaintiffs were shareholders in the Corporation from March 2001 until May 2008.

3. During that time Plaintiffs were the owners of 20% of the stock issued by the Corporation.

4.  A majority of the stock issued by the Corporation was owned by Lloyd Worden, Howard Martin, and Patti Peterson ("the Majority Shareholders").

5. On March 1, 2001, Plaintiffs and the Majority Shareholders signed a shareholders agreement prepared by the Defendant, a copy of which is attached hereto as Exhibit 1.

6.  The agreement placed limitations on the sale of the Corporation's stock.  Before a shareholder in the Corporation could sell his stock, the agreement required the stock first be offered to the other shareholders on a pro rata basis.

7.  The Corporation was a Subchapter S  Corporation under the Internal Revenue Code. The shareholders agreement provided that no more than 15% of earnings of the Corporation would be designated retained earnings.

8. The agreement also provided as follows:

The stockholders further agree that the Corporation shall distribute monthly pro rata among

all shareholders a minimum of $50,000 as a draw against earnings of Corporation.

    9. The agreement further provides that each stock certificate shall bear a legend making reference to the shareholders agreement, the legend to be that "the agreement provides that transferees, pledgees, and assignees of the shares are bound by said agreement."

    10. The Defendant Thomas E. Harrington was the attorney for the Plaintiffs beginning in 1989. The attorney-client relationship included but was not limited to the following representation and counseling by the Defendant for the Plaintiffs:

    A. Representation, advice and preparation of documents in all of Plaintiffs business matters, including but not limited to the formation of the corporation known as Carriages of Illinois, shareholder agreements in Carriages of Illinois and the Corporation, merger agreement between Carriages of Illinois and the Corporation, advice and counsel and preparation of documents in the sale by the Majority Shareholders to the stock purchaser, George Shapland, preparation of land trust agreements and leases for real estate used by Carriages of Illinois and the Corporation to carry on the business and the eventual purchase of Plaintiffs stock and real estate used by the Corporation in conducting its business. This representation continued through May 2008

    B. Purchase and sale of three residences in Champaign County, estate planning advice and documents, and a postnuptial agreement between the Plaintiffs relating to their assets and income and the potential division thereof.

    11. In October or November 2003, George Shapland ("the stock purchaser") attempted to buy a controlling interest of the stock of the corporation.

    12. The defendant was the attorney for the stock purchaser in the attempt to buy a

controlling interest of the stock of the corporation, had been attorney for him many years, had investments in common with the stock purchaser, and had been a personal friend of the stock purchaser since childhood.

13. The Defendant had been the attorney for the Corporation for many years prior to November 2003.

14. The Defendant had been the attorney for the Majority Shareholders of the Corporation for many years prior to November 2003.

15. The Majority Shareholders agreed to sell their stock in the corporation to the stock purchaser but the Plaintiffs refused the stock purchaser's offer of $3,125,000 for their shares.

16. During the negotiations and offers made by the stock purchaser to Plaintiffs and the Majority Shareholders, the Defendant acted as attorney for the Plaintiffs, as well as the stock purchaser.

17. During the negotiations, a conflict of interest developed between Plaintiffs and the stock purchaser

18. It was in the interest of the Plaintiffs that earnings for the Corporation be treated and distributed according to the terms of the shareholders agreement as described above and that 85% to 90 % of earnings be distributed to shareholders, such treatment and distribution to continue during the sale by the Majority Shareholders and thereafter for an indefinite time.

19. It was in the interest of the stock purchaser to change or terminate the requirements regarding earnings in the shareholders agreement and distribution of 85% to 90%  so that the stock purchaser would have complete control over earnings of the Corporation.

20. The Defendant was aware of this conflict.

21. In relation to the facts pleaded in this Count II,, it was the duty of the Defendant to refrain from making a statement of material fact or law to the Plaintiffs which statement the Defendant knew or reasonably should have known was false. This duty is stated in Rule 4.1 of the Illinois Rules of Professional Conduct.

22. The Defendant made a statement of material fact or law to the Plaintiffs which he knew or reasonably should have known was false, in that Defendant told the Plaintiffs that not withstanding (1) the sales agreement between the stock purchaser and the majority shareholders, and (2) the waiver of the right of first refusal signed by the Plaintiffs waiving their rights under the Shareholders Agreement, and (3) the agreement signed by the Plaintiffs consenting to the assignment of the Shareholder Agreement to the stock purchaser in place of the majority shareholders, the stock purchaser would be obligated to continue to treat and distribute earnings of the Corporation in the same fashion required in Paragraph 7 of the Shareholders Agreement.

23. The sale of stock between the Majority Shareholders and the stock purchaser was closed on December 1, 2004. Part of the purchase price was payable to the Majority Shareholders in annual installments continuing until January 1, 2008.

24. The stock purchaser continued to distribute 85% to 90% of earnings from the Corporation with the same treatment and distribution described in the shareholders agreement.

25. On October 19, 2007, Plaintiffs learned for the first time that the defendant had prepared a memo dated May 22, 2006 which memo is attached hereto as Exhibit 3.

26. In that memo, the defendant gave the following opinion with regard to treatment and

distribution of earnings:

> After the payout for the stock, the applicable document becomes the Shareholder Agreement and under Paragraph 7 of that agreement, the Corporation should withhold a minimum of 10% earnings annually and distribute $50,000 as a draw against the earnings monthly for a total of $600,000. There is no specific requirement for payout of the balance of the earnings. However, any retention should consider any needs requiring additions to capital under sound business practice.

This opinion is contrary to the opinions defendant had previously given Plaintiffs.

27. On November 13, 2007, the Board of Directors of the Corporation passed a resolution to designate 62% of the earnings of the Corporation as retained earnings, as opposed to the limitation of a maximum of 15% being designated retained earnings in the Shareholders Agreement. The stock purchaser was not a controlling shareholder of the Corporation and was in effective control of the Corporation.

28. If the Defendant had told Plaintiffs his opinion as described in Paragraph 26 above, Plaintiffs would not have signed the waiver of right of first refusal and would have accepted the offer of the stock purchaser to purchase their shares.

29. The Plaintiffs refused the offer to purchase described in Paragraph 15 in reliance on the false statements of material fact or law by the Defendant described in paragraph 22 above.

30 the injuries suffered by the Plaintiffs were as follows:

A. After the board resolution on November 13, Plaintiff was forced to accept $2,334,812 for his stock in the corporation; if the Defendant had not made the false statements of material fact or law described in Paragraph 22, they would have accepted the stock purchaser's offer of $3,125,000 in November 2003.

B.  B. Plaintiffs were the owners of a portion of the real estate leased to the Corporation on which the Corporation conducted its business.  The misconduct of the defendant forced Plaintiffs to sell the real estate to the stock purchaser at a price less thaan the fair market value resulting in a loss of over $1,000,000.

Wherefore Plaintiffs pray for judgement in an amount to be determined by the Court and for costs of suit.

S/ William Allison

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**    **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.         Example:    U.S. Civil Statute: 47 USC 553
                Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.