IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DENNIS NOONAN and | ) | |
| LANA NOONAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  09-3191 |
| | ) | |
| THOMAS HARRINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Thomas Harrington's Motion to Dismiss and/or Strike Count III (d/e 56) (Motion). For the reasons set forth below, the Motion is ALLOWED in part. The Court strikes the prayer for punitive damages, but otherwise denies the request to dismiss Count III.

STATEMENT OF FACTS

For purposes of this Motion, the Court must accept as true all well-pleaded factual allegations contained in Count III of the Amended Complaint (d/e 50) and draw all inferences in the light most favorable to

1

Plaintiffs Dennis and Lana Noonan. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). When read in that light, Count III must set forth a short and plain statement of the claims showing that the Plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559-63 (2007); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663 (7th Cir. 2007). In doing so, the allegations must plausibly suggest that the Plaintiffs are entitled to relief. Twombly, 550 U.S. at 569 n.14. Allegations of bare legal conclusions or labels alone are not sufficient. Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).

The Plaintiffs own 20 percent of the stock in Worden-Martin, Inc. (Corporation), a corporation engaged in the business of selling and servicing automobiles in Champaign County, Illinois. The remaining 80 percent of the stock was owned by four individuals, Lloyd Worden, Howard Martin, Wayne Weber, and Patty Peterson (Majority Shareholders). Defendant Thomas Harrington is an attorney.

On March 1, 2001, all of the shareholders of the Corporation signed a Shareholder Agreement. Harrington prepared the Shareholder Agreement

2

and advised the Corporation and all of the shareholders regarding this Agreement. The Shareholder Agreement provided that, should a shareholder desire to sell his or her stock, each remaining shareholder had a right of first refusal to purchase a proportionate share of the stock offered for sale. The Shareholder Agreement also provided that the Corporation would retain ten to fifteen percent of the earnings annually and distribute the rest of the earnings to shareholders.

In September or October 2003, George Shapland began negotiating with the Majority Shareholders for the purchase of a controlling interest in the Corporation. Initially, Harrington represented Shapland, the Majority Shareholders and the Corporation in these negotiations. In December 2001, Harrington ceased representing Lloyd Worden in the negotiations. During these negotiations, Shapland also offered to buy the Plaintiffs' shares for $3,145,000.00.

In May 2004, Shapland and the Majority Shareholders entered into an agreement to sell the controlling interest in the Corporation to Shapland. This sale was dependent on the Plaintiffs waiving their rights of first refusal. Harrington advised the Plaintiffs to waive their rights of first refusal. The Plaintiffs allege that Harrington had a conflict of interest because he knew

that the Plaintiffs wanted the Corporation to continue to distribute 85 to 90 percent of the Corporation's earnings to shareholders, but Shapland wanted to retain most of the earnings in the Corporation. Harrington also knew that once Shapland completed the payments for the stock on January 2, 2008, earnings' distributions would no longer be governed by the Shareholder Agreement. Harrington also knew that Shapland could change the make-up of the Board of Directors and thereby amend the terms of the Shareholder Agreement.

Notwithstanding the alleged conflict of interest, Harrington advised the Plaintiffs that the sale of the controlling interest in the Corporation to Shapland would not affect their rights under the Shareholder Agreement. Harrington withheld from the Plaintiffs his opinion that Shapland could change the distribution of earnings once he completed his payments for the stock. The Plaintiffs relied on Harrington's advice and executed the waivers. Shapland then completed the purchase of a controlling interest in the Corporation.

On May 22, 2006, Harrington issued a written opinion to Shapland in which he opined that Shapland could retain additional earnings in the Corporation after he completed all payments for the Majority Shareholders'

4

stock in January 2008.  On October 2, 2007, Shapland sent the Plaintiffs notice that he intended to distribute only enough earnings to shareholders to cover the shareholders' income tax obligations for the Corporation's earnings.  On October 15, 2007, Harrington disclosed his May 22, 2006, opinion to the Plaintiffs opining that Shapland could do so.  Shapland thereafter used his controlling interest in the Corporation to change the make-up of the Board of Directors and cause the Corporation to retain over 60 percent of the earnings in the Corporation to the detriment of the Plaintiffs.

Plaintiffs allege in Count III that Harrington violated his duty to them by giving the May 22, 2006, opinion.  He further violated his duty to them by withholding his opinion regarding the effect of the stock sale on their rights under the Shareholder Agreement.  As a result of Harrington's wrongful actions, the Plaintiffs have been injured by the loss of income from the Corporation.  The Plaintiffs also allege that they lost rent because they were part-owners of real estate leased to the Corporation.  Plaintiffs seek to recover the compensatory and punitive damages from Harrington in Count III.

ANALYSIS

Harrington moves to dismiss Count III as a redundant pleading of the same claim plead in Count I. Count I alleges a legal malpractice claim against Harrington. Complaint (d/e 1), Count I. Harrington also asks the Court to strike the prayer for punitive damages because Illinois law prohibits punitive damage claims in legal malpractice cases. 735 ILCS 5/2-1115.

Plaintiffs argue that Counts I and III are alternative pleadings rather than redundant pleadings. This Court can strike redundant pleadings. Fed. R. Civ. P. 12(f). Plaintiffs, however, may also plead in the alternative. Fed. R. Civ. P. 8(d)(2). The Plaintiffs' allegations in Count I and III are not identical. The Plaintiffs allege slightly different wrongful conduct by Harrington in the two Counts. The Court will treat the differences in the factual allegations as alternate pleadings. The Court, therefore, will not dismiss or strike Count III as redundant.

The Court, however, will strike the prayer for punitive damages in Count III. Illinois does not allow recovery of punitive damages in legal malpractice cases. 735 ILCS 5/2-1115.[1] Count III alleges the Plaintiffs had an attorney/client relationship with Harrington, Harrington violated his

---

[1] The parties agree that this case is governed by Illinois law.

duties arising from that relationship, and they suffered injury as a result. The claim, therefore, is a legal malpractice claim and punitive damages are not available. 735 ILCS 5/2-1115; see Kennedy v. Grimsley, 361 Ill.App.3d 511, 837 N.E.2d 131, 133-34 (Ill.App. 3$^d$ Dist. 2005).

The Plaintiffs argue that Count III alleges a claim for willful and wanton conduct, rather than legal malpractice, and therefore, punitive damages are available. The Plaintiffs rely on Cripe v. Leiter to support their position. Cripe, 291 Ill.App.3d 155, 683 N.E.2d 516 (Ill.App. 3$^d$ Dist. 1997). The plaintiff in Cripe alleged a claim for legal malpractice, but also included a common law fraud claim for fraudulent billing. The Cripe Court held that the plaintiff could pursue punitive damages for the fraud claim, but not the malpractice claim. In this case, the Plaintiffs allege in Count III that Harrington breached his fiduciary duty to them as their lawyer. Such a breach constitutes legal malpractice, and the statutory bar on punitive damages applies. Kennedy, 837 N.E.2d at 133-34.

THEREFORE, Defendant Thomas Harrington's Motion to Dismiss and/or Strike Count III (d/e 56) is ALLOWED in part and DENIED in part. The Court strikes the prayer for punitive damages from Count III, but otherwise denies the request to dismiss or strike Count III. Plaintiffs may

pursue alternate claims for compensatory damages in Counts I and III.

IT IS THEREFORE SO ORDERED.

ENTER: May 5, 2010

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE